**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK7296)
William Brown, Esq. (WB6828)
275 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRENDA FLORES,**<br>*on behalf of herself and others similarly situated*,<br><br>**Plaintiff,**<br><br>- against -<br><br>**GREENWICH BBQ LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**CMH BBQ HOLDINGS LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**BROADWAY BBQ LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**UPPER EAST BBQ LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**BATTERY BBQ LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**WESTCHESTER BBQ LLC**<br> **d/b/a MIGHTY QUINN'S BARBEQUE,**<br>**MICHA MAGID,**<br>**and CHRISTOS GOURMOS,**<br><br>**Defendants.** | **No: 20-cv-9514**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff Brenda Flores ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, Greenwich BBQ LLC d/b/a Mighty Quinn's Barbeque, CMH BBQ

Holdings LLC d/b/a Mighty Quinn's Barbeque, Broadway BBQ LLC d/b/a Mighty Quinn's Barbeque, Upper East BBQ LLC d/b/a Mighty Quinn's Barbeque, Battery BBQ LLC d/b/a Mighty Quinn's Barbeque, Westchester BBQ LLC d/b/a Mighty Quinn's Barbeque (collectively, "Corporate Defendants"), Micha Magid and Christos Gourmos (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unlawfully retained tips, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) misappropriated tips, (3) stautory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendants retaliated against Plaintiff for speaking out about Defendants' unlawful wage practices, seeking from Defendants: (1) economic damages, (2) liquidated damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.    This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

#### *Brenda Flores*

8.    Plaintiff Brenda Flores is an adult who resides in Queens County, New York.

9.    Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

10.    Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Defendants*

11.    At all relevant times, Defendants owned and operated an enterprise comprised of six (6) restaurants in New York under the common trade name "Mighty Quinn's Barbeque" with addresses as follows:

a.    75 Greenwich Ave, New York, NY 10014 ("Mighty Quinn's West Village");

b.    103 Second Ave, New York, NY 10003 ("Mighty Quinn's East Village");

c.  1407 Broadway, New York, NY 10018 ("Mighty Quinn's Midtown West");

d.  1492 Second Ave, New York, NY 10075 ("Mighty Quinn's Upper East Side");

e.  225 Liberty St, New York, NY 10281 ("Mighty Quinn's Battery Park City"); and

f.  125 Westchester Ave, White Plains, NY 10601 ("Mighty Quinn's Westchester") (collectively, "Mighty Quinn's Restaurants").

12.  At all relevant times, Defendants owned and operated Mighty Quinn's Restaurants as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

13.  At all relevant times, employees, food and supplies were interchangeable and regularly transferred among Mighty Quinn's Restaurants.

14.  At all relevant times, Mighty Quinn's Restaurants was operated under the same wage and hour policies established by Individual Defendants.

15.  At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

16.  At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.  At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### Greenwich BBQ LLC

18.  Corporate Defendant Greenwich BBQ LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 75

Greenwich Avenue, New York, NY 10014 and an address for service of process located at 103 Second Avenue, Ground Floor, New York, NY 10003.

19.     At all relevant times, Corporate Defendant Greenwich BBQ LLC has done business as "Mighty Quinn's Barbeque."

20.     At all relevant times, Defendants operated Mighty Quinn's West Village through Corporate Defendant Greenwich BBQ LLC.

21.     At all relevant times, Corporate Defendant Greenwich BBQ LLC had an annual dollar volume of sales in excess of $500,000.

22.     Corporate Defendant Greenwich BBQ LLC is a covered "employer" within the meaning of the FLSA and NYLL.

23.     Corporate Defendant Greenwich BBQ LLC employed Plaintiff and similarly situated employees.

24.     At all relevant times, Corporate Defendant Greenwich BBQ LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

25.     At all relevant times, Corporate Defendant Greenwich BBQ LLC applied the same employment policies, practices and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### CMH BBQ Holdings LLC

26.     Corporate Defendant CMH BBQ Holdings LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 103 Second Avenue, New York, NY 10003 and an address for service of process located at c/o Carly Eggert, 90 Dayton Avenue, Suite 88, Passaic, NJ 07055.

27.     At all relevant times, Corporate Defendant CMH BBQ Holdings LLC has done business as "Mighty Quinn's Barbeque."

28.     At all relevant times, Defendants operated Mighty Quinn's East Village through Corporate Defendant CMH BBQ Holdings LLC.

29.     At all relevant times, Corporate Defendant CMH BBQ Holdings LLC had an annual dollar volume of sales in excess of $500,000.

30.     Corporate Defendant CMH BBQ Holdings LLC is a covered "employer" within the meaning of the FLSA and NYLL.

31.     Corporate Defendant CMH BBQ Holdings LLC employed Plaintiff and similarly situated employees.

32.     At all relevant times, Corporate Defendant CMH BBQ Holdings LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

33.     At all relevant times, Corporate Defendant CMH BBQ Holdings LLC applied the same employment policies, practices and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### Broadway BBQ LLC

34.     Corporate Defendant Broadway BBQ LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1407 Broadway, New York, NY 10018 and an address for service of process located at 103 Second Avenue, New York, NY 10003.

35.     At all relevant times, Corporate Defendant Broadway BBQ LLC has done business as "Mighty Quinn's Barbeque."

36.     At all relevant times, Defendants operated Mighty Quinn's Midtown West through Corporate Defendant Broadway BBQ LLC.

37.     At all relevant times, Corporate Defendant Broadway BBQ LLC had an annual dollar volume of sales in excess of $500,000.

38.     Corporate Defendant Broadway BBQ LLC is a covered "employer" within the meaning of the FLSA and NYLL.

39.     Corporate Defendant Broadway BBQ LLC employed Plaintiff and similarly situated employees.

40.     At all relevant times, Corporate Defendant Broadway BBQ LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.     At all relevant times, Corporate Defendant Broadway BBQ LLC applied the same employment policies, practices, and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### *Upper East BBQ LLC*

42.     Corporate Defendant Upper East BBQ LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1492 Second Avenue, New York, NY 10075 and an address for service of process located at 103 Second Avenue, New York, NY 10003.

43.     At all relevant times, Corporate Defendant Upper East BBQ LLC has done business as "Mighty Quinn's Barbeque."

44.     At all relevant times, Defendants operated Mighty Quinn's Upper East Side through Corporate Defendant Upper East BBQ LLC.

45.     At all relevant times, Corporate Defendant Upper East BBQ LLC had an annual dollar volume of sales in excess of $500,000.

46.     Corporate Defendant Upper East BBQ LLC is a covered "employer" within the meaning of the FLSA and NYLL.

47.     Corporate Defendant Upper East BBQ LLC employed Plaintiff and similarly situated employees.

48.     At all relevant times, Corporate Defendant Upper East BBQ LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

49.     At all relevant times, Corporate Defendant Upper East BBQ LLC applied the same employment policies, practices and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### Battery BBQ LLC

50.     Corporate Defendant Battery BBQ LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 225 Liberty Street, New York, NY 10281 and an address for service of process located at 103 Second Avenue, Ground Floor, New York, NY 10003.

51.     At all relevant times, Corporate Defendant Battery BBQ LLC has done business as "Mighty Quinn's Barbeque."

52.     At all relevant times, Defendants operated Mighty Quinn's Battery Park City through Corporate Defendant Battery BBQ LLC.

53.     At all relevant times, Corporate Defendant Battery BBQ LLC had an annual dollar volume of sales in excess of $500,000.

54.    Corporate Defendant Battery BBQ LLC is a covered "employer" within the meaning of the FLSA and NYLL.

55.    Corporate Defendant Battery BBQ LLC employed Plaintiff and similarly situated employees.

56.    At all relevant times, Corporate Defendant Battery BBQ LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

57.    At all relevant times, Corporate Defendant Battery BBQ LLC applied the same employment policies, practices and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### *Westchester BBQ LLC*

58.    Corporate Defendant Westchester BBQ LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 125 Westchester Avenue, White Plains, NY 10601 and an address for service of process located at 103 Second Avenue, New York, NY 10003.

59.    At all relevant times, Corporate Defendant Westchester BBQ LLC has done business as "Mighty Quinn's Barbeque."

60.    At all relevant times, Defendants operated Mighty Quinn's Westchester through Corporate Defendant Westchester BBQ LLC.

61.    At all relevant times, Corporate Defendant Westchester BBQ LLC had an annual dollar volume of sales in excess of $500,000.

62.    Corporate Defendant Westchester BBQ LLC is a covered "employer" within the meaning of the FLSA and NYLL.

63.     Corporate Defendant Westchester BBQ LLC employed Plaintiff and similarly situated employees.

64.     At all relevant times, Corporate Defendant Westchester BBQ LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

65.     At all relevant times, Corporate Defendant Westchester BBQ LLC applied the same employment policies, practices and procedures to all non-exempt employees at Mighty Quinn's Restaurants.

### Micha Magid

66.     At all relevant times, Individual Defendant Micha Magid was an owner and operator of Mighty Quinn's Restaurants.

67.     At all relevant times, Individual Defendant Micha Magid was a principal of each of the Corporate Defendants.

68.     Individual Defendant Micha Magid is a covered "employer" within the meaning of the FLSA and NYLL.

69.     Individual Defendant Micha Magid employed Plaintiff and similarly situated employees.

70.     At all relevant times, Individual Defendant Micha Magid was directly involved in managing the operations of Mighty Quinn's Restaurants.

71.     At all relevant times, Individual Defendant Micha Magid had authority over personnel or payroll decisions and employment policies, practices and procedures at Mighty Quinn's Restaurants.

72.     At all relevant times, Individual Defendant Micha Magid had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Mighty Quinn's Restaurants, including their work assignments, work schedules, pay and responsibilities.

73.     At all relevant times, Individual Defendant Micha Magid had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Mighty Quinn's Restaurants.

74.     At all relevant times, Individual Defendant Micha Magid had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Mighty Quinn's Restaurants.

75.     At all relevant times, Individual Defendant Micha Magid had the power to maintain employment records, including time and/or wage records of employees at Mighty Quinn's Restaurants.

### *Christos Gourmos*

76.     At all relevant times, Individual Defendant Christos Gourmos was an owner and operator of Mighty Quinn's Restaurants.

77.     At all relevant times, Individual Defendant Christos Gourmos was a principal of each of the Corporate Defendants.

78.     Individual Defendant Christos Gourmos is a covered "employer" within the meaning of the FLSA and NYLL.

79.     Individual Defendant Christos Gourmos employed Plaintiff and similarly situated employees.

11

80.    At all relevant times, Individual Defendant Christos Gourmos was directly involved in managing the operations of Mighty Quinn's Restaurants.

81.    At all relevant times, Individual Defendant Christos Gourmos had authority over personnel or payroll decisions and employment policies, practices and procedures at Mighty Quinn's Restaurants.

82.    At all relevant times, Individual Defendant Christos Gourmos had the power to hire, fire, promote or discipline Plaintiff and similarly situated employees, and control the terms and conditions of their employment at Mighty Quinn's Restaurants, including their work assignments, work schedules, pay and responsibilities.

83.    At all relevant times, Individual Defendant Christos Gourmos had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Mighty Quinn's Restaurants.

84.    At all relevant times, Individual Defendant Christos Gourmos had the power to prevent or stop any unlawful practices that harmed Plaintiff and similarly situated employees at Mighty Quinn's Restaurants.

85.    At all relevant times, Individual Defendant Christos Gourmos had the power to maintain employment records, including time and/or wage records of employees at Mighty Quinn's Restaurants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

86.    Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt tipped employees employed at Mighty Quinn's Restaurants owned, operated, and/or controlled by Defendants, from the date that is three

(3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

87.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. Further, Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiff and FLSA Collective Members earned from customers. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

88.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

89.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

90.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

### NEW YORK CLASS ACTION ALLEGATIONS

91.     Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt tipped employees employed at Mighty Quinn's Restaurants owned, operated, and/or controlled by

Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

92.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

93.    The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

94.    The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

95.    Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

96.    Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) unlawfully keeping or allowing managerial

or supervisory employees to keep a portion of tips, (iii) failing to provide proper wage notices, and (vi) failing to provide proper wage statements, in violation of the NYLL.

97.    Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

98.    Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

99.    Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

100.    Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

101.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

102.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

103.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

104.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

105.    Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

      a.  Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

      b.  Whether Defendants paid Plaintiff and Class Members at the lawful minimum wage rate;

c. Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Class Members under the NYLL;

d. Whether Defendants provided proper notice to Plaintiff and Class Members that Defendants were taking a tip credit;

e. Whether Defendants provided proper wage statements informing Plaintiff and Class Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

f. Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiff and Class Members;

g. Whether Defendants required Plaintiff and Class Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

h. Whether Defendants kept accurate records of the amounts of tips earned by Plaintiff and Class Members;

i. Whether Defendants subjected Plaintiff and Class Members to an invalid tip pooling arrangement;

j. Whether Defendants misappropriated tips from Plaintiff and Class Members by keeping or distributing a portion of the tips to employees who are not entitled to receive tips under the NYLL;

k. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, at hire and before a pay change, as required by the NYLL; and

l. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

106.    Plaintiff was employed by Defendants as a server and counter worker at Mighty Quinn's West Village restaurant located at 75 Greenwich Avenue, New York, NY 10014 from in or around June 2019 through October 2, 2020.

107.    During her employment with Defendants, Plaintiff regularly observed employees from other Mighty Quinn's Restaurant locations coming to Mighty Quinn's West Village on a permanent or temporary basis. Similarly, Plaintiff regularly observed employees from Mighty Quinn's West Village being sent to work at different Mighty Quinn's Restaurant locations on a

permanent or temporary basis. For example, Defendants sent Plaintiff to work at Mighty Quinn's East Village to cover other employees' shifts.

108.    Based on Plaintiff's observations and conversations with co-workers, Defendants applied the same pay policies and practices at all Mighty Quinn's Restaurants.

109.    Throughout her employment with Defendants, Defendants paid Plaintiff at an hourly rate less than New York's minimum wage. Specifically, Plaintiff was paid (i) $14.00 per hour from the beginning of her employment until in or around December 2019; (ii) $13.00 per hour from in or around January 2020 until in or around February 2020; (iii) $13.50 per hour from in or around March 2020 until in or around June 2020; and (iv) $13.75 per hour from in or around July 2020 until the end of her employment with Defendants.

110.    Based on Plaintiff's observations and conversations with her co-workers at Mighty Quinn's Restaurants, Defendants claimed a tip credit and paid Plaintiff, FLSA Collective Members and Class Members at the same or similar hourly rates that were at all times less than New York's minimum wage.

111.    Throughout her employment with Defendants, Plaintiff regularly observed inconsistencies between the tip amounts earned from customers and the amounts distributed to tipped workers. For example, Plaintiff regularly noted that the tips that Plaintiff and other tipped employees received from Defendants were less than the amount they collectively earned from the customers. Plaintiff recalls a specific instance when Plaintiff, as the closing cashier, counted the total tip amount earned from customers for the workday and told the supervisor so that he can report the amount on Defendants' daily closing report. The next day, however, Plaintiff noticed that the amount stated on the daily closing report was only half of the actual tip amount that Plaintiff had counted. Moreover, Plaintiff recalls other instances when a portion of the collected

tips went missing and the tip amounts listed on the wage statements were incorrect and different from the actual amount of tips Plaintiff received from Defendants. Each time Plaintiff requested to see Defendants' tip records to understand the discrepancies and irregularities, Defendants stated that they lost the records.

112.    Throughout Plaintiff's employment with Defendants, Defendants had a policy of giving at least forty percent (40%) of the weekly tip pool to the supervisors, and all of the tipped workers splitting only the remaining amount after the supervisors' cut. The primary duties of supervisors included overseeing and directing the activities of the staff; monitoring inventory for food and supplies; checking food quality, service, and sanitation; and preparing reports and other paperwork in the back office.

113.    As a result of Defendants' invalid tip policies and practices, Plaintiff and other tipped employees at Mighty Quinn's Restaurants were not paid the full and proper tip amounts every week.

114.    From the start of her employment until in or around June 2020, Plaintiff regularly worked three (3) to five (5) days per week for a total of approximately twenty-five (25) to thirty-five (35) hours per week.

115.    Plaintiff's work schedule consisted of a mix of lunch and dinner shifts, and varied each week. Plaintiff worked one day of double-shifts (i.e., both lunch and dinner shifts) every other week.

116.    Plaintiff's lunch shifts were from 10:00 a.m. to 6:00 p.m. each day.

117.    Throughout her employment with Defendants, Plaintiff was regularly required to arrive early for lunch shifts and perform various non-tipped preparation work for an hour before Defendants opened the restaurant to customers.

118.    Plaintiff's dinner shifts were from 5:00 p.m. to 11:00 p.m. each day.

119.    Throughout her employment with Defendants, Plaintiff was regularly required to stay late for dinner shifts and perform various non-tipped cleaning and closing duties for an extra hour after Defendants closed the restaurant to customers.

120.    Based on Plaintiff's observations and conversations with her co-workers at Mighty Quinn's Restaurants, FLSA Collective Members and Class Members worked hours similar to Plaintiff's work hours.

121.    In or around June 2020, Plaintiff submitted an internal complaint to Defendants raising several concerns, including Defendants' failure to provide safe working conditions or support for employees during the COVID-19 pandemic, Defendants' tip credit deductions and failure to pay the full minimum wage to tipped employees, and the tipped employees not being paid the full and proper amounts of tips earned.

122.    During an in-person meeting in late June 2020 with restaurant owner, Micha Magid, Plaintiff reiterated her complaint that it was unfair and improper that Defendants were claiming tip credit deductions and paying the tipped employees less than the minimum wage when the employees were not being paid their full and proper tips. Particularly, Plaintiff noted that it was unfair and improper that the supervisors were keeping a large percentage of the tip pool prior to distributing the remainder to the tipped workers.

123.    In or around July 2020, following Plaintiff's complaint to Defendants and her meeting with Magid, Defendants gave a $0.25 hourly pay increase to all tipped employees at Mighty Quinn's Restaurants. However, Defendants did not change their pay policies or practices with respect to tip credit deductions or tip pooling arrangement.

124.    Furthermore, starting in or around July 2020, Defendants significantly reduced Plaintiff's work hours to only one day (i.e. four to six hours) per week, resulting in a substantial pay cut each week. During this time, other employees at the restaurant continued to be scheduled to work for at least three days per week.

125.    In August and September 2020, Plaintiff asked the store manager and Defendants' human resources department for information about the tip pool breakdown so that she can understand Defendants' basis for tip amounts distributed to Plaintiff and other tipped workers. Despite multiple requests, however, Defendants refused to produce Plaintiff with an exact tip pool breakdown or clarification on how Defendants calculated the tip amounts distributed to employees.

126.    From July 2020 until the end of her employment with Defendants on October 2, 2020, Defendants retaliated against Plaintiff for speaking out and complaining about unpaid wages and improper tip payments. Specifically, Defendants reduced Plaintiff's work hours and scheduled her for less desired hours, knowingly causing Plaintiff to lose substantial wages and tips; making Plaintiff's work more difficult; increasing scrutiny; and reprimanding Plaintiff. During this time, no other employees at the restaurant were subject to such scrutiny, hostility, or unfair treatment. Such work environment caused Plaintiff to feel extremely stressed during this time despite her efforts to stay positive and forced Plaintiff to resign from her position.

127.    Throughout her employment with Defendants, Plaintiff did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL. Specifically, Defendants' wage notices that were provided to Plaintiff did not state her correct regular and overtime pay rates.

128.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants paid wages to Plaintiff, FLSA Collective Members and Class Members weekly by check with wage statements.

129.    Throughout her employment with Defendants, Plaintiff did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiff did not state her correct pay rate or tip credit rate. Further, the amounts of tips listed on the wage statements were different from the amounts Plaintiff earned each week.

130.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants failed to pay Plaintiff, FLSA Collective Members and Class Members the lawful minimum wage due to an invalid tip credit deduction.

131.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Plaintiff, FLSA Collective Members and Class Members did not receive proper notice that Defendants were claiming a tip credit.

132.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Plaintiff, FLSA Collective Members and Class Members did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

133.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants failed to provide proper wage statements informing Plaintiff, FLSA Collective Members and Class Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiff, FLSA Collective

Members and Class Members failed to state the accurate amounts of tips earned by tipped employees.

134.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants failed to track daily tips earned by Plaintiff, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

135.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Plaintiff, FLSA Collective Members and Class Members were required to engage more than two (2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work, running side work, and closing side work. During the shifts, the employees were given a master check list of shared non-tipped tasks that they were required to complete. These duties included, but were not limited to, moving the beverages; stocking food, utensils, napkins and other supplies; preparing and storing sauces, vegetables, and coleslaw; restocking the delivery station with containers and bags; wrapping bread rolls; sweeping and mopping the floor; wiping the counters and making sure everything is clean; setting indoors and/or outdoors seating; cleaning the windows and restrooms; stacking chairs, and other non-tipped activities.

136.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiff and Class Members earned from customers.

137.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants failed to provide proper wage notices to Plaintiff and Class Members. The wage notices that were provided to Plaintiff and Class Members failed to accurately reflect their regular and overtime pay rates.

138.    Based on Plaintiff's observations and conversations with co-workers at Mighty Quinn's Restaurants, Defendants failed to provide proper wage statements to Plaintiff and Class Members. The wage statements that were provided to Plaintiff and Class Members failed to accurately reflect their regular pay rate and tip credit rate, and failed to state other required information. In addition, the wage statements that were provided to Plaintiff and Class Members failed to reflect the accurate amounts of tips they earned each week.

139.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiff, tipped FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

140.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiff, tipped FLSA Collective Members and Class Members earned from customers and/or distributing a portion of the tips to managers, supervisors and other employees who are not entitled to receive tips under the FLSA and NYLL.

141.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

142.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
#### *Unpaid Wages and Tips in Violation of the Fair Labor Standards Act*

143.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

144.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

145.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

146.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiff and tipped FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

147.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants kept and/or distributed a portion of the tips earned by Plaintiff and tipped FLSA Collective Members to those who do not customarily and regularly receive tips.

148.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants required Plaintiff and tipped FLSA Collective Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

149.    Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiff and tipped FLSA Collective Members earned from customers. 29 C.F.R. § 531.52.

150.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

151.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

152.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

153.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

154.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### *Unpaid Wages and Tips in Violation of the New York Labor Law*

155.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

156.    At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

157.    Defendants failed to pay Plaintiff and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

158.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiff and the Class the full minimum wage at a rate of (a) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (b) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (c) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (d) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; (e) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (f) $15.00 per hour for all hours worked from December 31, 2018 through the present.

159.    Defendants have failed to notify Plaintiff and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

160.    Defendants required Plaintiff and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

161.    Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiff and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

162.    Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

163.    Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

164.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiff and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

165.    Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

166.    As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wage, misappropriated tips,

liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## **THIRD CAUSE OF ACTION**
### *Retaliation in Violation of the Fair Labor Standards Act*

167.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

168.    Plaintiff is an employee and a protected person within the meaning of the FLSA and Defendants are covered employers under the FLSA.

169.    The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

170.    Defendants unlawfully retaliated against Plaintiff on the basis of her protected activities under the FLSA by reducing Plaintiff's work hours, scheduling Plaintiff for less desired hours, making Plaintiff's work more difficult, increasing scrutiny, and reprimanding Plaintiff after she made an internal complaint regarding unpaid wages and tips, ultimately resulting in termination.

171.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

172.    Due to Defendants' violation of FLSA, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees.

## FOURTH CAUSE OF ACTION
### *Retaliation in Violation of the New York Labor Law*

173.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

174.    Plaintiff is an employee and a protected person within the meaning of the NYLL and Defendants are covered employers under the NYLL.

175.    The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

176.    Defendants unlawfully retaliated against Plaintiff on the basis of her protected activities under the NYLL by reducing Plaintiff's work hours, scheduling Plaintiff for less desired hours, making Plaintiff's work more difficult, increasing scrutiny, and reprimanding Plaintiff after she made an internal complaint regarding unpaid wages and tips, ultimately resulting in termination.

177.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

178.    Due to Defendants' violation of NYLL, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.  An award of unpaid minimum wage due under the FLSA and NYLL;

e.  An award of unlawfully retained tips due under the FLSA and NYLL;

f.  An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage and misappropriated tips, pursuant to the FLSA or NYLL;

g.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

h.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

i.  An order awarding relief for Defendants' retaliation, including but not limited to lost compensation, under the FLSA and NYLL;

j.  Pre-judgment and post-judgment interest;

k.  Reasonable attorneys' fees and costs of this action;

l.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

m.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

n.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.

Dated:  November 12, 2020                      Respectfully submitted,

                                                **BROWN, KWON & LAM LLP**

                             By:      */s/ Angela Kwon*

                                                  Angela Kwon, Esq. (AK7296)
                                                  William Brown, Esq. (WB6828)
    521 Fifth Avenue, Suite 1174
    New York, NY 10175
    Tel.: (718) 971-0326
    Fax: (718) 795-1642
    akwon@bkllawyers.com
    wbrown@bkllawyers.com
    *Attorneys for Plaintiff*